IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT JACKSON

APRIL 1999 SESSION



FILED

July 15, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | |
| Appellee, | ) | No. 02C01-9807-CC-00203 |
| | ) | |
| | ) | Madison County |
| v. | ) | |
| | ) | Honorable Whit LaFon, Judge |
| | ) | |
| TARRAN KYLES, | ) | (Felony murder and especially aggravated |
| | ) | robbery) |
| | ) | |
| Appellant. | ) | |

For the Appellant:

J. Colin Morris
112 W. Baltimore, Ste. 202
Jackson, TN 38301

For the Appellee:

Paul G. Summers
Attorney General of Tennessee
          and
J. Ross Dyer
Assistant Attorney General of Tennessee
450 James Robertson Parkway
Nashville, TN 37243-0493

James G. (Jerry) Woodall
District Attorney General
          and
James W. Thompson
Assistant District Attorney General
225 Martin Luther King Dr., P.O. Box 2825
Jackson, TN 38302-2825

OPINION FILED:_____

AFFIRMED

Joseph M. Tipton
Judge

## O P I N I O N

The defendant, Tarran Kyles, appeals as of right from his convictions by a jury in the Madison County Circuit Court for felony murder and especially aggravated robbery, a Class A felony. He was sentenced to life without parole for the felony murder and as a Range II, multiple offender to thirty-five years for the especially aggravated robbery. The trial court ordered the sentences to be served consecutively in the custody of the Department of Correction. The defendant essentially raises the sufficiency of the evidence as his only issue. He argues that Roy Easley, who testified against him, was an accomplice and that Mr. Easley's testimony was neither credible nor corroborated. We affirm the judgments of conviction.

At trial, Alline Savage testified that she had dated the victim, Howard Moore, for thirty-one years. She testified that on January 14, 1995, she called the victim's house several times but got no answer. She said that she and the victim's niece, Earline Moore, went to the victim's house to find him. She said they knocked on the victim's door and got no answer. She testified that she then called the police and that they entered the victim's house when the police arrived. She said that she and Ms. Moore found the victim lying on the bedroom floor with blood on his neck and chest.

Earline Moore testified that she accompanied Ms. Savage to the victim's house. She said that she found the victim's bloody body lying on the floor. She stated that she noticed the victim's clothes lying outside his house on the back side of the property. She testified that she later went back to the victim's house and noticed that his television and cable converter box were missing.

Dr. Tony R. Emison, the Madison County Medical Examiner, testified that although he was not the medical examiner at the time of the victim's death, he was the custodian of the victim's records. He testified that the records revealed numerous cuts on the victim's foot, neck, chin and hand. He testified

2

that the victim bled to death from the multiple cuts. Dr. Jerry Francisco, the pathologist who performed the autopsy, concurred in the cause of death.

Mike Turner, an investigator with the Jackson Police Department, testified that he surveyed the crime scene and took photographs. He testified that the victim's throat had been cut and that he saw blood everywhere. He said it appeared that a struggle took place in the bedroom. He said he saw a chest of drawers with the drawers pulled out as if someone had rummaged through them. He said that he also saw an empty television stand. He testified that he found a cigarette butt in the bathroom adjacent to the victim's bedroom and that the butt was standing upright on the side of the bathtub. He testified that he also found a knife on the kitchen counter. He identified a television and a cable box that were later recovered by the police, and he testified that they found no useful latent fingerprints on either item.

Donna Turner, an investigator with the Jackson Police Department, testified that she went to the scene and gathered anything that might have a fingerprint on it to send to the FBI. She said that fifty-one latent fingerprints and seven latent palmprints were discovered but none matched those of the defendant or Roy Easley. Officer Turner testified that she sent numerous items to the FBI for hair and fiber collection, along with known hair samples from the defendant and Mr. Easley. She said that no hair fibers were found on those items. Officer Turner said that during the time in which the F.B.I. was analyzing the evidence, she learned that Mr. Easley wanted to plead guilty in the case and give a statement. She said she advised the FBI lab of Mr. Easley's plea, and they stopped testing the samples for matches to Mr. Easley.

Officer Turner testified that she spoke with the defendant regarding his version of the events. The defendant told her that he and Mr. Easley went to the victim's house but that he stayed outside and stood next to a tree while Mr. Easley went in the house. He said he heard a noise and then saw Mr. Easley coming out of the house. The defendant said that while Mr. Easley was in the house, he saw a light come on and assumed that someone was using the bathroom, getting a garbage bag in which to put the television, or washing their hands. He said that when Mr. Easley came out of the house, he had

3

a television and a cable converter box. He said he helped Mr. Easley carry the television and cable box to Dwight Pearson's house. He said they put the items in an abandoned car that was behind the house. The defendant said that Mr. Easley told him to stay with the items while Mr. Easley went down the street to try to sell them. The defendant told Officer Turner that when Mr. Easley returned, he took the television and cable box to a house down the street. He said that when Mr. Easley returned about thirty or forty minutes later, Mr. Easley said he sold the items for forty dollars. The defendant said that he did not get any of the money.

Officer Turner testified that the tree by which the defendant claimed to stand while Mr. Easley was in the victim's house was about two hundred and eighty-four feet from the victim's house. She testified that the defendant told her that he did not go into the victim's house. She testified that she recovered the cable box from Jessie Jacox and the television from a repair shop.

On cross-examination, Officer Turner testified that Mr. Easley was charged with first degree murder for the victim's death. She said that the defendant testified against Mr. Easley at his preliminary hearing. She said that Mr. Easley pled guilty to facilitation of first degree murder and received an approximate twenty-year sentence on October 16, 1996. She stated that one month later, she presented the case against the defendant to the grand jury, and the defendant was indicted.

On redirect examination, Officer Turner testified that she saw blood on Mr. Easley's boots and that the boots were sent to the FBI. She said the FBI reported that there was not enough blood on the boots to perform a DNA test. She stated that she did not know if the police ever found the clothing the defendant was wearing on the night of the offense.

Jessie Jacox testified that on the night of the incident, Mr. Easley came to his house at midnight and asked to borrow money. He said that Mr. Easley told him he could keep a television for a week until Mr. Easley could pay him back. He said Mr. Easley told him that the television was at "Blimp's" house. Mr. Jacox said he told Mr. Easley to get the television so he could look at it. Mr. Jacox said that

4

Mr. Easley returned with the television and a cable box and that he loaned money to Mr. Easley. He testified that he had known Mr. Easley for a long time and trusted him. He said he did not know that the television and cable box were stolen. He testified that he later heard about a murder in which a television and cable box were stolen, and he immediately called the police. He testified that the television was at a repair shop but that he got the television and the cable box and turned them over to the police.

On cross-examination, Mr. Jacox testified that he never questioned why Mr. Easley needed to borrow money, nor did he question Mr. Easley about the television that night. He stated that he was not afraid to refuse to loan money to Mr. Easley. He said he did not know the defendant.

Roy Easley testified that he had been in jail for two years after pleading guilty to facilitation of first degree murder. He said that he had not been sentenced but that the state had agreed to recommend a twenty-year sentence if he cooperated and testified truthfully at the defendant's trial. He stated that before this case, he had no felony record. He admitted being addicted to cocaine in January 1995. Mr. Easley testified that he was at the victim's house when the victim was killed, and he said the defendant killed the victim.

Mr. Easley testified that on the night of the incident, he and the defendant used forty dollars worth of drugs at a dope house on East Chester Street. He said that when they ran out of money, he decided to borrow money from the victim. He said he had worked with the victim and had borrowed money from him many times. He said that he and the defendant went to the victim's house together late Friday night. Mr. Easley testified that as soon as they arrived at the victim's house, he went to use the bathroom, leaving the victim and the defendant together. He said he did not discuss borrowing money from the victim because the victim knew why he was there. He said that he smoked a cigarette while in the bathroom and placed the butt upside down on the bathtub. He said that while he was in the bathroom, he heard a noise and heard the victim say, "Stop it. I give you anything you want. I give you anything you want. Don't hit me no more."

5

Mr. Easley testified that when he left the bathroom and went to the victim's bedroom, he saw the defendant wrapping up the victim's cable box. He said he saw the victim lying on the floor with blood around his neck and on his shirt, and he told the defendant that they had to get out of the house. He said the victim's eyes were open, but he was not moving. He said that he helped the defendant carry the television and cable box to a wrecked car parked behind the dope house. He said he left the television and cable box with the defendant while he went to Mr. Jacox's house. He said that Mr. Jacox told him that he would buy the items but not to bring anyone with him. He said that he took the television and cable box to Mr. Jacox's house but got no money for them because the television did not work. He said that Mr. Jacox loaned him ten dollars and that he and the defendant spent the money on more drugs at the dope house.

On cross-examination, Mr. Easley testified that the victim did not lend him any money that night. He stated that he had worked with the victim at a small construction company, but he could not remember the name of the company. He said that the defendant testified against him at his preliminary hearing but that the defendant had lied. Mr. Easley said that he could carry the television from the dope house to Mr. Jacox's house because it was only a half-block away. He said he could not carry the television from the victim's house to the dope house alone because it was a much greater distance. He said he pled guilty because his attorney told him that it was in his best interest. He said his attorney told him that he was facing the death penalty or life in prison. He said his attorney did not tell him that the only way to escape those possible sentences was to plead guilty to facilitation. He said that until the defendant's trial, he had only told half of the truth because he feared for his family's safety.

Kenny Ray Clark testified that he was with the defendant and Mr. Easley on the night of the incident at the dope house. He said he saw the defendant and Mr. Easley leave to borrow money. He said that Mr. Easley always borrowed money from the victim and that the defendant said he was going with Mr. Easley that night. He said he later discussed the incident with both Mr. Easley and the defendant. He said Mr. Easley told him that he came out of the bathroom and saw the defendant and the victim fighting.

6

He said Mr. Easley told him that he saw the victim fall but that the defendant said the victim was not hurt. He said Mr. Easley told him that he had witnessed the incident.

On cross-examination, Mr. Clark testified that the defendant told him two or three different versions of what happened that night. He said that in one version, the defendant said he saw Mr. Easley kill the victim and said he was in the house when the victim was killed. Mr. Clark said that this version came after the defendant spoke with an investigator. He said that in another version, the defendant told him that he was down the street and heard a scuffle. Upon the foregoing proof, the jury convicted the defendant of felony murder and especially aggravated robbery.

The defendant argues that the evidence is insufficient to support his convictions. He contends that Mr. Easley was an accomplice and that his testimony was neither credible nor corroborated. The state contends that the evidence is sufficient.

Our standard of review when the sufficiency of the evidence is questioned on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). This means that we do not reweigh the evidence but presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

The defendant contends that the evidence is insufficient because Mr. Easley's testimony was not credible. He argues that Mr. Easley lied in order to preserve a favorable sentence for himself. Essentially, the defendant is asking us to re-weigh the evidence, a duty that is not the function of this court. The jury was entitled to accredit Mr. Easley's testimony. See Sheffield, 676 S.W.2d at 547 (holding that questions of credibility of the witnesses are for the jury).

7

The defendant also contends that Mr. Easley was an accomplice and that his testimony was not sufficiently corroborated. In Tennessee, a conviction may not be based upon the uncorroborated testimony of an accomplice. State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994). An accomplice is an individual who knowingly, voluntarily and with common intent participates with the principal offender in the commission of an offense. State v. Lawson, 794 S.W.2d 363, 369 (Tenn. Crim. App. 1990). "Mere presence at the scene of a crime does not make one an accomplice, nor does the mere fact that one was indicted for the same offense as the accused." Letner v. State, 512 S.W.2d 643, 647 (1974). Accomplice testimony is corroborated if "'there is some other evidence fairly tending to connect the defendant with the commission of the crime, so that his conviction will not rest entirely upon the evidence of the accomplice.'" Marshall v. State, 497 S.W.2d 761, 765 (Tenn. Crim. App. 1973) (quoting Clapp v. State, 94 Tenn. 186, 195, 30 S.W. 214, 217 (Tenn. 1895)). "It is not necessary that the corroboration extend to every part of the accomplice's evidence." State v. Hawkins, 469 S.W.2d 515, 520 (Tenn. Crim. App. 1971). In other words, corroboration is sufficient if it relates to some material fact or facts from which the jury may rationally infer that the accomplice is testifying truthfully about the defendant. Marshall, 497 S.W.2d at 765.

Viewing the evidence in the light most favorable to the state, we question whether Mr. Easley can even be called an accomplice. If the jury believed his testimony, he was not knowingly involved in the killing. In any event, we conclude that his testimony is sufficiently corroborated. The defendant told Officer Turner that he was with Mr. Easley on the night of the incident and acknowledged staying with the television and cable box. The defendant told Kenny Ray Clark that he and Mr. Easley were going to the victim's house to get money. He also told Mr. Clark that he was inside the house when the victim was killed. We note as well that Officer Turner found a cigarette butt on the bathtub exactly as Mr. Easley had described it. The corroboration of Mr. Easley's testimony showed that the defendant went with Mr. Easley to the victim's house to obtain money, that the defendant was in the house when the victim was killed, and that the defendant watched the stolen items while Mr. Easley searched for a buyer. From this corroboration, the jury could rationally conclude beyond a reasonable doubt that Mr. Easley testified truthfully about the defendant's involvement and that the defendant was guilty of felony murder and especially aggravated robbery.

8

In consideration of the foregoing and the record as a whole, we affirm the judgments of convictions.

_____
Joseph M. Tipton, Judge

CONCUR:

_____
David G. Hayes, Judge


_____
L.T. Lafferty, Senior Judge